Apologies to the government and Mr. Blair, sorry. The next case is U.S. v. Blair, 18-12-20, and I apologize. Good morning, Your Honor, and may it please the Court, my name is Kathleen Shen, and I apologize to Mr. Blair. This Court has said that a supervised release condition that allows probation to enact a total ban on Internet usage will typically result in a greater deprivation of liberty than necessary. And the challenge condition here is even broader than that. It presumptively applies to all computers as well as all Internet access devices. This effectively exiles Mr. Blair from modern society. Counsel, now, I know I'm interrupting your train of thought. My train of thought in this case is what you've got to convince, in other words, so you acknowledge on page 18 of your brief that some limitation is necessary in this case. And then we received both the 28J's letters, which I'm sure, Counsel, I know my colleagues have all read that, which I think the case that you're relying on may be an opposite. But what would you write if you agree that some limitation, which you say is necessary, how would you write that limitation? Your Honor, I think if I were in the Tenth Circuit's position, what I would say, the question is, does the fact that Mr. Blair's underlying conduct involved use of the Internet standing alone justify a blanket ban or a blanket restriction on his use of computers and Internet devices? Because that's the only thing the district court considered here. She said, you know, I see that he used the Internet, therefore, this condition is okay. But the condition was get permission from who? The probation? That's right. Okay. What's wrong with that? That's not sufficient here, Your Honor, as this court recognized in Ullman and as the Second Circuit and the Third Circuit recognized in Helena and Eaglin, where the district court doesn't indicate to the probation office when permission is to be granted. When you read those two cases that you're relying on, counsel, they're not even close to this case, in my opinion. This guy, you know, what, 750,000 pictures on his computer? In that range, yes, Your Honor. The cases that you're relying on, one of them didn't even involve the second, you know, the problems that we have here. So I'm just trying to get you to tell me, you're saying some, you know, supervision needs to be necessary. But where you would go with it would be, well, yeah, some is necessary, but none of it would do anything other than violate his rights. So I'm wanting you to tell me how you would write one that would pass muster according to you. So first, I want to disagree with your belief that Eaglin and Helena are different. First, Helena did involve extensive use of the computer, and Mr. Helena was convicted of using a computer to solicit sex with a minor. That's a serious, you know, the Third Circuit says that's as serious as any use of the computer one can imagine. In the Second Circuit, although the underlying conviction was not for using a computer, the rationale for imposing the condition was that he had previously violated one of his terms of a supervised release as a result of meeting a woman on a dating website. And second, the Second Circuit emphasized that, you know, there were cases and cases that it was relying on where even where the conduct involved using a computer, this kind of blanket restriction is overbroad. Second, what I would say is the fact that Mr. Boyer downloaded many, many, many pictures doesn't mean that he can't use the entire internet. Most of the internet doesn't involve or isn't, doesn't give him the opportunity to use. That's not what the court ordered in this case. The court said you can use it, but you've got to get permission from probation. Isn't that right? No, Your Honor. There's nothing here where the court says that you can use it. The presumption is that he cannot use it, and if probation grants prior permission, then he may. Second, you know, I think what you're sort of getting at is, well, can't we assume that the probation officer is going to grant him some level of permission? And the reason we can't make that assumption is because unlike in Ullman, there's nothing here where the district court says to probation, this isn't a total risk prohibition. You know, the presumption is he should be able to use the internet. There's no such directive from the district court here. In fact, this is just like, let's, you know, in Ullman, the district court or this court said that if the condition were read to say the probation officer in its discretion could ban the use of the entire internet, that would be a greater deprivation than necessary. And that's exactly what this condition does. There's nothing that says that the probation office should grant reasonable uses of the internet. And in fact, the district court says, you know, it's just up to probation. There's no guidance to probation under what circumstances any use of the internet would be allowed. And the probation officer could well prohibit use of any computers or internet access devices. Well, counsel, again, to me, this is a very, they're all very important, but this is an important case. And as I read, looking at the authority, everything we have is an unpublished opinion. And I'm looking at your case as one that we need to get out and say something published about what, where we're going and how we're going, how we're going to get there. Now, as I recall, in the unpublished cases, the 10th Circuit has always said that some kind of restriction would be proper. And do you agree with me there? Yes, Your Honor. And I would just note, Ullman is a published decision, as are White and Walser. And Ullman is the most recent one, I believe it's 2015. And in that case, this court said that if you can interpret or if the condition can be construed as allowing or allows the probation office to implement a total ban, then that is almost always going to be a greater deprivation than necessary. And that's what we have here, a condition that on its face allows the probation office to prohibit Mr. Blair from ever using any computer or internet access devices. See, that's where I'm having trouble following you, because I don't read, maybe I don't read very well, but I don't read that to be that draconian as to what you're saying. But that could be reported otherwise. Well, I think it's useful here to compare the condition at issue here, which says essentially Mr. Blair is not to use any computer or internet access device without the prior permission of his probation office, and compare that to the condition that was at issue in Ullman, which was a little bit more complicated, but the sort of, the language that was being attacked is that the probation office could issue restrictions slash prohibitions on internet and computer use. And this court said, well, you know, if we said that probation could enter, could issue a prohibition on all internet use, that probably would be a greater deprivation of liberty than necessary. But given that probation says that they recognize that he has a right to use the internet, and the district court says this is not a prohibition, it's merely a restriction, we're not going to construe it that way. We don't have those other pieces here. We simply have the condition that says he can't use the computer or any computer or internet access device without probation's permission. So you're drawing a distinction between the negative and the positive. In Ullman, you're saying that it was, you, well, start with our case. In our case, you can't use it unless the probation officer allows you to. And in Ullman, you can use it unless the probation officer prohibits you from using it. Is that the distinction you're drawing? That is an important distinction here. But you're drawing more than that. Yes, Your Honor. So what's the more than that? So the first thing you'd say, if, according to, responding to Judge Baldock, if you're going to have us draft something, you would prefer us to draft something that says you can use it unless the probation officer prohibits, rather than you can't use it unless they allow it. That's the first point. And then what's the second point you're addressing? The second point is that this is a case where a judge needs to provide more guidance to probation than simply, you know, what you think is appropriate, what you think is safe. And that's because... And so that problem is, you're concerned that it says that, right now it says the use of a computer and internet has to be limited, but it doesn't say for what purposes. That's right. And so you would like some statement that puts a limitation on it, which maybe then the probation officer could say, we've got these automatic restrictions that we can put on a computer that obviously, that trigger prohibitions when there's pornographic material or something. Something that makes it clear that the purpose of the restriction is not... Is pornographic. Pornographic. And I think this is where it's useful to look to Helena, where the Third Circuit says, the district court gave the probation office no guidance on the sorts of internet use that it should approve, and that the district court was obligated to tailor its restriction to the end of preventing him from playing on children. But here, under the restriction, the probation officer could, if he were, he or she is so inclined, could say, I'm not going to let you use computers to the extent it deals with political campaigns, because I think, I don't want you involved in, you're kind of a guy we don't want to participate in political campaigns. And that wouldn't be in violation of the restriction, and you're saying, we've got to stop that, we've got to make it clear that it couldn't be so broadly interpreted. That's right. The court must tailor the restriction in order to make it clear that... That it's somehow related to pornographic material. Or that Mr. Blair's misconduct. Yeah. And... Well, is there a misconduct beyond pornography that we're dealing with here? No. That's the only... Okay, so then it's pornography. Yes. It's the download of child pornography. And related to this, I think it's important... Yeah, I don't want to walk on, if you're still answering, are you still answering his question? Because my question is about what you just said, and how do you reconcile that with Allman? Because in Allman, there was no... It was upheld, the oral explanation, but only because the district judge said, this is not intended as a complete prohibition on the use of the internet. There was no requirement that it be tailored to pornography or anything relating to his particular offense. Right? So, we distinguish Allman on the negative-positive distinction, and then I think since Allman, it's become clear just how weighty an individual's liberty interest in having access to computers and the internet is. So would it be constitutionally permissible if the district judge had said at sentencing, this is not a complete prohibition on the use of the internet? That would not be sufficient in our view. But that's all that happened in Allman. That's what happened in Allman, but Allman, for example, predates Packingham, and even in just the last few years, the use of the internet has expanded. You're saying the law has evolved since Allman? The law and the facts have evolved. And so you are asking us to clarify or evolve the statements in Allman. You might say that the issue in Allman was not directly presented like it is here. That's right. And I would say Allman gets us out from under Walser and says, hey, this is a kind of prohibition that is going to raise the tensor of its concerns, and I think based on Packingham and just what we can see is that reliance on the use of the internet is such a huge part of daily life, we need some restrictions. Another thing I want to address is the idea that we can delegate to probation the authority to just make these decisions. There isn't necessarily a common sense or reasonable consensus as to what kinds of uses of the internet a person like Mr. Blair should be allowed to use, and that's why I think it's important for the district court to at least do some tailoring to say, look, someone like Mr. Blair, we want to restrict his internet usage in order to prevent future crimes like the ones he's seen in the past. That way to make it clear that he can still go on Amazon.com to buy a book or he can still look at the president's Twitter account, he gets those file as taxes online. Those are all uses of the internet that he may very well not be allowed to engage in in the future and may in fact be re-imprisoned for under the condition as it's presently written. Well, are you arguing that under your examples that the way it's written now, that if he goes to the probation officer and says, I need to file my taxes online, that you're presupposing that the probation officer is going to deny that use? I think the probation officer could deny that use under the condition as it's written because there's no guidance saying that he can't, and in addition to just this general proposition that a probation officer who's not a judge might not engage in this tailoring that the device level, so it says your use of devices is limited to the ones that probation office says that you may use. And so if the probation officer says, well, I want to prevent you from accessing message boards where you can get to child pornography, the only way you can do that is to prevent him from getting on the internet at all. And you know, that's another problem with the condition, it's too blunt. Well, if you have to measure it on the basis of what the underlying problem was with the in your example, I asked the probation officer to be able to file my income tax. You're saying that, well, the probability is they're going to deny that and it would be overbroad, but it is tailored to the fact that that has nothing to do with pornography. And so why would a probation officer deny that? The condition isn't tailored. The condition doesn't contain any tailoring and that tailoring should be provided by the probation officer on an ad hoc and subjective basis. So you're wanting us to draft something that says, as Judge Ebel said, in the positive fact that you can't do it for A, B, C, D, on infinitum. And so the first time that it's left out and it's not specified, we're all back here again. I see you're out of time, may I answer this? Certainly. I think it would be sufficient in this case to provide the probation officer with the that the restrictions should be tailored to not allow him to use the internet. It's up to the, I think the probation office and the district court on remand can consider factors such as what software is available, what kind of monitoring is available, and that will help them to tailor the condition more closely. And I understand the probation office may need flexibility to say maybe child pornography, right now you can't buy it on Amazon, but maybe one day in the future you can. And I think that the tailoring that we're talking about that says the purpose of the restriction is to prevent access to child pornography does accommodate the kind of flexibility that will be needed in order to prevent, you know, or to address that kind of evolution. Just a practical follow-up question I'd like both of you to answer. What if the probation officer does this arbitrary thing that is unlikely that they would do but they might and they say, you're the kind of guy we don't want to participate in politics. So if you're accessing it for politics, you can't do it. And that's contrary to the intent of the judge. What remedy under the current supervised release condition, what remedy does the defendant have? Can he go . . . when that happens, can he file some kind of a mandamus request or does he have a remedy or would the remedy have to be at the front end now when we're correcting the condition up front? Two parts to my response. First, you know, I would just note that Mr. Helena did go to prison for checking his email and logging into Facebook, so I don't believe it's that, you know, unlikely that Mr. Blair would be prohibited from going on Twitter, for example. Second, the . . . I think what we're talking about is the possibility of seeking modification in the future and I don't think that's an adequate remedy for Mr. Blair in this case. He won't have a right to counsel to seek modification and it would be very difficult for him to pursue this per se without access to the internet. So did . . . but if the probation officer . . . I mean, I don't want to take any more of your time. Just answer yes or no. If the probation officer took a totally arbitrary prohibition that's unrelated to pornography, does this defendant on the record right now before us without any modification, does he have a remedy for that? And what is that remedy? I'm not aware of any remedy other than seeking modification of the terms of supervised release or if the condition was . . . So he could go back to the judge at that point and seek modification? Yes. All right, fine. Now, when you come up, would you address that as your first answer and then we'll move on? Well, what you would have here would be a violation of his parole and you would be going before a trial court for revocation, right? That's the remedy that he has. He's got to be charged with violating it and he has the right to go before the court and deny, hey, what I did is not in violation of the . . . Mr. Blair shouldn't have to face re-imprisonment or otherwise comply with what we contend to be an unlawful condition of supervised release in the future. This is the appropriate time for this court and the district court to impose a lawful condition that provides the guidance that the probation officer, Mr. Blair, will need in the future and to avoid him facing re-imprisonment under what we contend to be an unlawful condition of supervised release. Thank you. Thank you very much. Mr. Farley? No. So if his remedy is only to face a revocation of parole and then to argue, that's a very chilling effect for a defendant. It's a pretty heavy burden to put on him. Judge Ebel, I think there's kind of two paths that are available here. In the first instance, the defendant could preemptively say, I want to do this thing, participate in politics. Probation officers says, no, that's out. And preemptively could move for modification to the district court. In the alternative... And who would he... To the sentencing judge, he would do that? Yes. And the sentencing judge has the authority to modify, after the fact, a condition of supervised release? At any time. Okay. At any time. In the alternative, and I think this is what Judge Balduck was touching on, he also could wait for a petition for a violation to be filed. I probably wouldn't advise him to do that. But again, that would be a defense to the petition. Look, this is not a reasonable understanding of what the court said. I would like to address some of Judge Balduck's issues as to this case. And then from there, we can talk more broadly about what would a rule look like. We begin with some things this court has already said. We always look at a common sense, non-technical reading of the conditions of release. And we always presume the probation officer is going to be reasonable. Now, in this case, the district court made it clear in its oral pronouncement that this was not going to be a blanket ban. And he is not a blanket ban. Judge said the defendant committed this offense via the use of a computer and electronic devices combined with the use of the internet. So that's kind of the starting place. The portion of the disputed condition does allow for the defendant to request to use computers and internet while under supervision. The court finds it appropriate that approval of the access to the internet should be addressed on a case-by-case basis. So where in what you just read, does the district judge say this is not a complete prohibition? He says this is going to be addressed on a case-by-case basis. Case-by-case is different than a complete prohibition. If we look at the Second Circuit decision. And on a case-by-case basis, unless the probation office does something in the affirmative, the defendant, Mr. Blair, cannot use any internet device. Two things about that, Your Honor. First, I would contrast this sharply with the Second Circuit decision that was offered as a supplemental authority in which in each and every case, the probation officer had no discretion to loosen the reins at all. He had to go back to the district court. That is a blanket ban. This is not a blanket ban. Secondly, a common-sense, non-technical view of the regulation would not prohibit the ringing of doorbells or opening refrigerator doors or adjusting room temperatures. That's not what this case was about. This case was about downloading hundreds of thousands of images of child pornography. Well, then why in Ullman did the panel specifically say that the written condition, which is essentially the substantial equivalent of what we have here, would have failed but for the district judge's oral pronunciation that this is not a complete ban? In other words, this might be addressed on a case-by-case basis. The probation officer's discretion is not cabined in any way other than your own concept of what a probation officer may do in a common sense, from a common-sense vantage point. But we have no idea what that officer's common sense would tell us. On that point, Your Honor, I would refer this court to its, I'm pronouncing it, Yantada decision from 2016, which is a published decision. And there, two of the conditions prohibited the defendant from being in places where they're illegal drugs or convicted felons. And the court read into that and said, look, being common-sense, non-technical, you can't be in a place where you know that there are convicted felons or illegal drugs going on. And I think that's a similar kind of thing here, where the court is clearly anticipating that he's going to be having access. And we're not trying to reach out beyond what the problem was in this case. I'd also read this condition, which is the one that we're focused on, number six, against other conditions. Number seven says you must allow a probation officer to install software and hardware designed to monitor computer activities. So we have in the same breath, the same court that's imposing number six, imposing number seven, which presumes there will be computers with internet access, because you're being ordered to allow probation to install the monitoring software. So I think sort of taking this as a whole, there's no reason to assume that the court really was intending to shut the door altogether. What the court was looking at, and I think certainly the discussion today has touched upon this, is that the law has been moving and the facts on the ground have been moving. Obviously, an internet access restriction now is going to be much more significant to an individual than it might have been 30 years ago, right? I mean, we all understand that. And so what I think we find in this case and in other cases that I've seen recently, increasingly the district courts are saying, you know, this thing's a moving target. This guy's not going to be out for a while. In this case, the defendant is going to be until 2027, I think, is his projected release date. This is all moving. And so we're going to ask probation to monitor and tailor this as we go along, because by the time this defendant is out, we're going to have other issues we hadn't even thought of at this point. And so... Doesn't that suggest that the probation officer's discretion is going to be unbridled? I think it's going to be rather broad. Now, interestingly, we don't have a delegation argument made in this case. Sometimes you do get cases where the delegation is sort of juxtaposed against that, but we don't have that in this case. And that's why we suggested, in part, picking up on Judge Holmes' concurrence in Yantada about hypothetical applications of this thing, perhaps, are prudentially unripe. Certainly... Well, in Ford... I'm sorry? In Ford, the panel recently said, with regard... I can't pronounce the word, but there were two parts of it, the penile device. Even though the defendant had life imprisonment, the panel said, well, it's prudentially ripe, because of what Ms. Chen said. The defendant would have no right to counsel. He would be in a motion for modification. He would be risking reincarceration and the like. So how do you square your argument about prudential unripeness with that aspect of Ford? Well, I think, in part, the hypotheticals we've been offered with here are perhaps, well, more hypothetical than that specific requirement in Ford, that which had been articulated by the court. Most of these here, I think, are outside of common sense, non-technical reading. Now, there are things about watching an episode of This Old House. That presupposes a smart TV, which is web-capable. And so some kind of restriction on that probably is in order to make sure that all he's watching is This Old House on the smart TV. What about streaming R-rated movies? Yeah, I think that's probably outside this. So would a probation officer permit that or not permit that, or do we just not know? I would expect, if a probation officer is being reasonable in this context, would permit that. Because we see, in other contexts, just trying to regulate sexual material for the sake of sexual material without any kind of nexus to the offense conduct or the history probably doesn't pass muster. What we're trying to do is to prevent child pornography from being accessed. And of course, as you do in many of these cases, you're trying to put a buffer around that a little bit. Because we're trying to prevent the access, not just punish it after the fact. Now, I'm trying to think, it was, yeah, it might have been Judge Ebell's question. And I could be wrong about this. In the reply brief, as we're talking about what kind of rule could be written, in the reply brief, the defense asked that the court simply amend the condition to require filtering software. And there are two problems with this. Say, first, that was never asked for below. There would have been opportunity to ask the court to do that. And second, obviously, if that's really a problem, could ask the district court to revise that. But the third thing, really, is that the defendant, here and now, or at the point of release, could ask probation, put filtering software so I can access all these other things I want to access. So I can go, I can watch appropriate movies, I can engage in political discourse, I can do all these other things. And so I think that's kind of what the district court was hoping for, is that there would be some on-the-ground, practical, real-world working together to make this work. Because we don't know what the landscape exactly is going to look like eight years from now. In terms of going back to Judge Baldock's question, which I don't have a complete answer for, and what kind of rule the court could look at, a certain amount of delegation, I think, because of the day-to-day issues that arise, and because technology is a moving target, a certain amount of delegation needs to be indulged to make the system work. No district judge, and certainly this court, doesn't want to be involved in the minutiae of day-to-day events in an individual defendant's life. Well, what would you think about language something like this, that your computer use should be limited to a restriction that is reasonably calculated, or the restriction should be reasonably calculated to prevent the defendant from using his computer or internet to access, store, produce, or send child pornography in any form? At first blush, that makes a great deal of sense to me, Your Honor. There's a tendency, and I do want to draw this out, and I think your language touches on this, there's a tendency to focus solely on the internet, but the computer itself... The proposal here was the computer or the use of... Right, right, but I'm reinforcing that. The computer itself, even if you don't use the internet to access pornography, the computer itself, once you obtain it, whether it's on an external hard drive, which Mr. Blair had, was a large external hard drive, but this is not, or flash drives, or CD-ROMs, once you obtain it, once you have the computer, then you can manipulate it, you can view it, you can copy it in preparation for distribution. So it's important that internet filtering is a significant part of this, it's not the whole story, and so some computer regulations are appropriate, but obviously when the court, when Judge Arguello said computer, what we're talking about when we say computer, we're not thinking about refrigerators, and thermostats, and doorbells, right? We're talking about a PC, or an iPad, or something where the defendant has the ability to manipulate the information. I could talk about the sentence, but if there are no questions about that, I will yield my time. Thank you. Thank you. Thank you. This matter is submitted. Thank you both for your excellent briefing and oral arguments, and this matter is submitted. Court is in recess until 9 o'clock a.m. tomorrow.